IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

**JOHN J. HARRRIS, ON BEHALF OF HIMSELF AND ALL OTHERS SIMILARLY SITUATED,**

    *Plaintiff*

v.

**GENERAL MOTORS COMPANY**

    *Defendants*

Civil Action No. _____

## CLASS ACTION COMPLAINT

COMES NOW, JOHN J. HARRIS, Plaintiff, on behalf of himself and all others similarly situated, and for his Class Action Complaint against GENERAL MOTORS COMPANY (hereinafter Defendant GM or GM) respectfully alleges the following:

### PARTIES

1. Plaintiff is a citizen of Bowie County, Texas, and pursuant to FED. R. CIV. P. Rule 23(b)(2) and (b)(3), Plaintiff seeks certification of the following Classes:

The "Texas Class" for Counts One through Four (hereinafter "the Class Members" or "the Class" or the "Texas Class"):

*All consumer residents in Texas who own, owned, lease, or leased a 2015-2016 Cadillac Escalade, 2014-2016 Chevrolet Silverado 1500, 2015-2016 Chevrolet Suburban, 2015-2106 Chevrolet Tahoe, 2014-2016 GMC Sierra 1500, or 2015-2016 Yukon*

Excluded from the Class are the following individuals or entities:

a. Individuals or entities, if any, who timely opt out of this proceeding using the correct protocol for opting out that will be formally established by the Court;

b. Any and all federal, state, or local governments, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions;

c. Any currently sitting federal judge or magistrate in the current style and/or any persons within the third degree of consanguinity to such judge or justice;

d. Any person who has given notice to the Defendant by service of civil suit and alleged he or she has suffered personal injury; and

e. Any person seeking punitive and/or exemplary damages.

The "Nationwide Class" for Count Five (hereinafter "the Class Members" or "the Class" or the "Nationwide Class"):

***All consumer residents of the United States who own, owned, lease, or leased a 2015-2016 Cadillac Escalade, 2014-2016 Chevrolet Silverado 1500, 2015-2016 Chevrolet Suburban, 2015-2106 Chevrolet Tahoe, 2014-2016 GMC Sierra 1500, or 2015-2016 Yukon.***

Excluded from the Class are the following individuals or entities:

a. Individuals or entities, if any, who timely opt out of this proceeding using the correct protocol for opting out that will be formally established by the Court;

b. Any and all federal, state, or local governments, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions;

c. Any currently sitting federal judge or magistrate in the current style and/or any persons within the third degree of consanguinity to such judge or justice;

d. Any person who has given notice to the Defendant by service of civil suit and alleged he or she has suffered personal injury; and

e. Any person seeking punitive and/or exemplary damages.

2. Defendant GENERAL MOTORS COMPANY is a foreign corporation whose principal place of business is in Detroit, Michigan. Defendant GM may be served through its registered agent for service: CT Corporation, 350 N. St. Paul St., Ste. 2900, Dallas, Texas 75201-0000. Defendant GM manufactured, distributed, sold, serviced and/or warranted the vehicles made the subject of this litigation, hereinafter referred to as the "Class Vehicles" for both Classes, which include: 2015-2016 Cadillac Escalade; 2014-2016 Chevrolet Silverado 1500; 2015-2016 Chevrolet Suburban; 2015-2016 Chevrolet Tahoe; 2014-2016 GMC Sierra 1500; and 2015-2016 Yukon. GM distributed, sold, serviced and/or warranted, directly or indirectly, hundreds, if not thousands, of Class Vehicles to Plaintiff and the Class Members with the understanding and expectation that those vehicles would be sold in, operate in, and be fit for their intended purpose and as warranted in Texas.

## JURISDICTION AND VENUE

3. Pursuant to 28 U.S.C. § 1332, this Court has original jurisdiction over the Plaintiff's and the Class Members' claims in that diversity of citizenship exists and Plaintiff seeks to represent a class of persons in a matter in controversy which exceeds the sum or value of $5,000,000, exclusive of interest and costs.

4. This Court has general and specific jurisdiction over the Defendant, in that Defendant GM has sufficient minimum contacts with Texas and within the Eastern District of Texas to establish Defendant's presence in Texas, and certain material acts upon which this suit is based occurred within the Eastern District of Texas, to include but not limited to: (1) the sale of the Defendant's defective product to the Plaintiff, (2) one of the failed repairs, and (3) an occurrence of failure after the warranty failed its essential purpose.

5. Venue is proper in the Eastern District of Texas pursuant to 28 U.S.C. 1391(b)(1-3) and (c) in that: (1) Defendant GM resides in the Eastern District of Texas because it is subject to personal jurisdiction within the Eastern District of Texas; (2) a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this judicial district; and (3) Defendant may be found in this district.

## FACTUAL NATURE OF THE SUIT

### A. Plaintiff Purchases A Class Vehicle.

6. On or about December 18, 2014, Plaintiff purchased a new 2015 Chevrolet Suburban which was delivered to Plaintiff in Bowie County, Texas. Plaintiff executed all sales documents in Bowie County, Texas.

7. In early January of 2017, Plaintiff and his wife noticed the brakes on the Suburban were not functioning properly. More specifically, the brakes would seemingly function without incident the first three to four times when they were applied or tapped, but thereafter the brakes would become hard and resist depression or require an increased effort to depress the brake pedal but with no stopping ability.

8. In January of 2017, Plaintiff contacted the dealership from which he purchased the Suburban and informed the dealership of the very serious braking failure issue.

### B. Defendant GM Knowingly Sold Dangerously Defective Vehicles to Consumers.

9. The dealership was familiar with the problem because in February of 2015, Defendant GM had issued a service bulletin #PIT5361B which affected the Class Vehicles as of that date to include 2015 Cadillac Escalade; 2014 Chevrolet Silverado 1500; 2015 Chevrolet Suburban; 2015 Chevrolet Tahoe; 2014-2015 GMC Sierra 1500; and 2015 Yukon. *See* Exhibit A. GM expressly acknowledged that "a customer may comment on a hard brake pedal or that

increased effort is needed to depress the brake pedal." As evidence of the defect, Defendant GM notified its dealers, "While performing normal diagnostics, fluid may be found in the brake booster and/or the booster vacuum line."

10. Ultimately, Defendant GM would issue a series of service bulletins to its dealers regarding the brake defect, with the latest bulletin dated March 15, 2017, and it included the following Class Vehicles and year models: 2015-2016 Cadillac Escalade; 2014-2016 Chevrolet Silverado 1500; 2015-2016 Chevrolet Suburban; 2015-2016 Chevrolet Tahoe; 2014-2016 GMC Sierra 1500; and 2015-2016 Yukon. *See* Exhibit A. As part of GM's overall strategy to engage in material omission and deception upon Plaintiff and the Class members, these bulletins contain false, misleading, or deceptive information about the potential for curing the defects because the purported repairs do not fix the defect and the statements are designed to mislead dealers and Class Vehicle owners.

11. Accordingly, Defendant GM was already aware of the defect prior to February of 2015, and yet it never informed Plaintiff or Class Members who had already purchased or leased a Class Vehicle. As of February 10, 2016, GM had verified some 19 affected vehicle models where the "CUSTOMER WILL NEED INCREASED EFFORT TO DEPRESS THE BRAKE PEDAL. TECHNICIAN MAY FIND FLUID IN THE BRAKE BOOSTER AND/OR THE BOOSTER LINE. TECHNICIAN WILL NEED TO REPLACE VACUUM PUMP, BRAKE BOOSTER, MASTER CYLINDER, VACUUM PUMP BELT AND VACUUM LINE BETWEEN THE BOOSTER AND THE PUMP." *See* Exhibit B. The 19 affected vehicles are the Class Vehicles which GM continued to sell without disclosure to the Class Members even after this admission.

12.     Disturbingly, the number of customer complaints echoed what GM already knew about its defective brake system: the need for increased effort to depress brake pedal, high occurrences in stop and go traffic, high occurrences of failure at lower speeds, brake booster issue, replacement of brake booster, replacement of master cylinder, safety issue, etc. *See* Exhibit C.

13.     Further, Defendant GM knowingly sold thousands of Class Vehicles following February 2015 to unsuspecting Class Members to whom GM said nothing about the braking defect.

### C. The Defendant's Braking Defect Cannot Be Remedied And Is Dangerous.

14.     On or about January 31, 2017, the dealership picked up Plaintiff's vehicle in Texas and took it back to the dealership for repairs. The dealership informed Plaintiff that it had performed the repairs pursuant to Defendant GM's service bulletin. The Suburban was delivered back to Plaintiff in Bowie County, Texas on February 4, 2017.

15.     On February 28, 2017, Plaintiff's wife, Samantha Harris, was driving the Suburban when the identical hard brake problem presented and the brake would not depress. A catastrophic failure of the brake occurred—after the purported fix—which caused the Plaintiff's Suburban driven by Mrs. Harris to crash with another vehicle.

16.     On the same day, Plaintiff notified the dealership of the brake failure and the resulting accident. Plaintiff further informed the dealership of his apprehension of ever operating the vehicle again, and he made a demand that Defendant GM should be responsible for the vehicle. The dealership notified Defendant GM in writing of the brake failure, the accident, and Plaintiff's request that GM take responsibility for the vehicle. *See* Exhibit D. On or about March 8 and 9, 2017, Defendant GM notified the dealership that it should, "STOP ALL WORK ON THE VEHICLE!," take no further action, ask for the "product allegation department," that GM had

opened a case/claim file, and GM would assume the handling of Plaintiff's problem and concerns. *See* Exhibit D.

17. On or about March 13, 2017, Plaintiff's wife was contacted by a representative of Defendant GM who requested Defendant GM be allowed to inspect the vehicle and indicated to Plaintiff's wife that no work was to be performed on the vehicle. Defendant GM's inspection of the vehicle occurred on or about March 14, 2017, at an auto-repair facility in Texarkana, Texas, and lasted all day.

18. On or about March 22, 2017, Plaintiff's wife inquired of Defendant GM's representative, Pam Brown, about the status of the claim and about what Plaintiff and his wife were supposed to do with an inoperable car and the resulting lack of transportation with a substitute vehicle. Defendant GM's representative, Pam Brown, stated to Plaintiff's wife, "It is really not our problem."

19. On or about April 29, 2017, Plaintiff contacted the dealership and informed the dealership that Defendant GM was doing nothing to resolve the issue of Plaintiff's wrecked vehicle and resulting lack of transportation for his family due to brake failure. On or about May 1, 2017, multiple representatives from the dealership attempted to make contact with GM. *See* Exhibit D. They were unsuccessful. *Id.*

20. On May 2, 2017, Defendant GM contacted the dealership and instructed the dealership to obtain the vehicle and repair the brakes according to the Service Bulletin. *See* Exhibit D. The dealership personnel responded that they had previously performed the repairs according to the Service Bulletin in February 2017 and that they believed Defendant GM should send a field engineer to come and inspect the Suburban's brakes. *Id.* Defendant GM informed the dealership that ***it had already sent a field engineer to inspect Plaintiff's brakes***, and that Defendant GM had

already determined the ***brakes failed during the inspection***. *Id.* The dealership informed GM they would not perform any additional warranty repairs on Plaintiff's Suburban. *Id.*

21. On or about May 2, 2017, and without Plaintiff's knowledge, Plaintiff learned that Defendant GM had directed that Plaintiff's Suburban be sent to a second dealership in Bowie County, Texarkana, Texas, to perform the brake repairs. Those repairs were purportedly performed pursuant to the Service Bulletin. However, Plaintiff was very concerned about the safety of the brakes and the vehicle.

22. On May 4, 2017, the first dealership formally notified Defendant GM in writing through legal counsel that it would forbear from performing any further repairs to Plaintiff's vehicle. The dealership further demanded that Defendant GM expeditiously resolve Plaintiff's problems with the Suburban.

23. On June 15, 2017, GM completely denied Plaintiff's claims and attempts to engage in a dialogue with GM. However, in its denial of all responsibility, Defendant GM continued with its "not our problem" philosophy and actually issued a warning to Plaintiff stating, "Please note that you have an obligation and responsibility to ensure that the subject vehicle and its related components are maintained and preserved in ***their immediate post-incident condition for as long as there is intent to pursue a claim and/or cause of action.***" GM sent this warning even though it had already inspected the Suburban and found the brake to be defective, and GM knew the vehicle had subsequently been repaired again by the second dealership. Yet, Defendant GM literally warned Plaintiff to do nothing with the Suburban.

24. On June 16, 2017, Plaintiff attempted to back the Suburban and a boat trailer on a boat ramp to launch his boat. In the process, the Suburban's brakes failed again, and Plaintiff repeatedly pumped on the brake in an effort to avoid having the vehicle go into the lake. Finally,

the vehicle stopped. This brake failure occurred even after Defendant GM had the vehicle repaired a second time pursuant to its Service Bulletin and warranty.

25. Currently, Plaintiff's unsafe Suburban sits at his home, and because Defendant GM cannot or will not repair it, it is wholly unusable and without value.

## **CLASS ALLEGATIONS**

26. This action has been brought and may be properly maintained and certified as a Class Action because as to *each* of the proposed classes:

(a) The questions and issues of law or fact are of a common or general interest, affecting Class of individuals and the public at large;

(b) The Class consists of a sufficiently large group of individuals, believed to exceed 1,000 members, and is so large that it is impractical to join all members of the Class before the Court as individual plaintiffs. The identity of Class members is readily ascertainable from various sources including GM's ownership records, government ownership records, and/or via simple notice by publication;

(c) The questions of law or fact common to the Class are substantially similar and predominate over those questions affecting only specific members of the Class;

(d) The Class is united by a community of interest in obtaining appropriate equitable relief including injunctive relief, recall of Class Vehicles, restitution, damages, and other available relief designed to redress the wrongful conduct of Defendant GM;

(e) Plaintiff is a member of the Class and his claims are typical of the Class;

(f) Plaintiff will fairly and adequately represent the claims of the Class, and protect the interests of the Class without exercising personal interest or otherwise acting in a manner inconsistent with the best interests of the Class generally;

(g) Plaintiff retained attorneys experienced in the litigation of class and representative claims and in the area of consumer protection litigation who have agreed to and will responsibly and vigorously advocate on behalf of the Class as a whole;

(h) Without class certification, the prosecution of separate consumer actions by individual members of the Class would be impracticable and financially difficult, and create a risk of repetitive, inconsistent and varying adjudications. This would have the effect of establishing incompatible standards of conduct for GM,

discouraging the prosecution of meritorious but small claims, and/or result in adjudications which would be dispositive of the interests of other Class members not parties to the adjudication, or otherwise substantially impair the ability of Class members to protect their rights and interests;

(i)     Defendant GM acted or refused to act on grounds generally applicable to the Class, thereby making the award of equitable relief and/or restitution appropriate to the Class as a whole;

(j)     The class action procedure is superior to other methods of adjudication, and specifically designed to result in the fair, uniform and efficient adjudication of the claims presented by this complaint. This class action will facilitate judicial economy and preclude the undue financial, administrative and procedural burdens which would necessarily result from a multiplicity of individual actions.

27.     Because the damages suffered by each Class member within the two classes are relatively small *compared to* the expense and burden of prosecuting this compelling case against a well-financed, multibillion dollar corporation, this class action is the only way each Class member can redress the harm that Defendant GM caused.

28.     Should individual Class members be required to bring separate actions, Texas' courts or courts around the nation would face a multitude of lawsuits that would burden the court system and create a risk of inconsistent rulings and contradictory judgments.  In contrast to proceeding on a case-by-case basis, in which inconsistent results will magnify the delay and expense to all parties and the court system, this class action presents far fewer management difficulties while providing unitary adjudication, economies of scale, and comprehensive supervision by a single court.

## CAUSES OF ACTION

### FIRST COUNT FOR RELIEF
### (Breach of Express Warranty)

29.     Plaintiff, individually and for the Texas Class, hereby incorporates each and every allegation as though fully set forth herein.

30. For each Class Vehicle sold by Defendant GM, an express written warranty was issued that provided for the inclusion of operational "4-Wheel Antilock Disc Brakes" in the standard vehicle price. *See* Exhibit E.

31. GM has knowingly sold to Plaintiff and Texas Class Members the Class Vehicles with the defective braking system and of which GM was aware of the *irreparable* defect present in the Class Vehicles, creating a serious safety risk for the driver, the Class Vehicles' occupants, other drivers, and pedestrians.

32. Defendant GM breached its express warranty by offering for sale and selling defective vehicles that were by design and construction defective and unsafe, thereby subjecting the occupants of the Class Vehicles purchased or leased to damages and risks of loss and injury.

33. Defendant GM's breach of its express warranties proximately caused the Texas Class to suffer damages in excess of $5,000,000.

34. Without limitation, GM's intentional delay and concealment of information regarding the brake defect from its dealers, prospective Class Vehicle purchasers, Texas Class Members, and Plaintiff, and its inability to remedy the defect through the Service Bulletins, all have caused any exclusive or limited remedy in the warranty to fail its essential purpose.

35. Any purported limitations of express warranties or remedies would be unconscionable because of Defendant's knowledge regarding the defects in Class Vehicles, Defendant's omission to the Texas Class Members about the defects and/or Defendant's intentional concealment of the defect, and the failure of GM to provide an adequate remedy.

36. Pursuant to Texas Civil Practice & Remedies Code §§ 38.001 and 38.002, Plaintiff is entitled to attorneys' fees on behalf of himself and for the Texas Class in that this matter involves an oral or written contract, Plaintiff and the Texas Class are represented by Counsel or

Counsel is being sought to represent the Texas Class, a claim was presented to GM, and GM has failed to pay the just amount owed within thirty (30) days after the claim was presented.

37.     Plaintiff and the Texas Class seek full compensatory damages allowable by law, attorney's fees, costs, punitive damages, and appropriate equitable relief including injunctive relief, a declaratory judgment, a court order enjoining Defendant GM's wrongful acts and practices, restitution, the repair of all Class Vehicles, replacement of all Class Vehicles, the refund of money paid to own or lease all Class Vehicles, and any other relief to which Plaintiffs and the Texas Class may be entitled.

## SECOND COUNT FOR RELIEF
### (Breach of Implied Warranty)

38.     Plaintiff, individually and for the Texas Class, hereby incorporates each and every allegation as though fully set forth herein.

39.     Defendant GM impliedly warranted that the Class Vehicles, which it designed, manufactured, sold, or leased to Plaintiff and members of the Texas Class, were merchantable, fit and safe for their ordinary use, not otherwise injurious to consumers, and would come with adequate safety warnings.

40.     Because the Class Vehicles are equipped with the defective braking system, the vehicle purchased or leased and used by Plaintiff and the Texas Class members is unsafe, unfit for use when sold, threatens injury to its occupants or others, and is not merchantable. Defendant GM breached the implied warranty of merchantability in the sale or lease of the Class Vehicles to Plaintiff and members of the Texas Class in that the vehicles were not fit for their ordinary purpose and not merchantable.

41. As a direct and proximate result of Defendant GM's breach of the implied warranty of merchantability and fitness for a particular purpose, Plaintiffs and members of the Texas Class suffered damages in excess of $5,000,000.

42. GM has knowingly sold to Plaintiff and Texas Class Members the Class Vehicles of which it was aware of an irreparable defect present in the Class Vehicles, creating a serious safety risk for the driver, the Class Vehicles' occupants, other drivers, and pedestrians.

43. Without limitation, GM's intentional delay and concealment of information regarding the brake defect from its dealers, prospective Class Vehicle purchasers, Texas Class Members, and Plaintiff, and its inability to remedy the defect through the Service Bulletins, all have caused any exclusive or limited remedy in the warranty to fail its essential purpose.

44. Any purported limitations of warranties or remedies would be unconscionable because of Defendant's knowledge regarding the defects in Class Vehicles, Defendant's omission to the Texas Class Members about the defects and/or Defendant's intentional concealment of the defect, and the failure of GM to provide an adequate remedy.

45. Plaintiff and the Texas Class seek full compensatory damages allowable by law, attorney's fees, costs, punitive damages, and appropriate equitable relief including injunctive relief, a declaratory judgment, a court order enjoining Defendant GM's wrongful acts and practices, restitution, the repair of all Class Vehicles, replacement of all Class Vehicles, the refund of money paid to own or lease all Class Vehicles, and any other relief to which Plaintiffs and the Texas Class may be entitled.

### THIRD COUNT FOR RELIEF
**(Violations of the Texas Deceptive Trade Practices Act Toward The Class)**

46. Plaintiff, individually and for the Texas Class, hereby incorporates each and every allegation as though fully set forth herein.

47. Defendant GM sold and continues to sell, and leased and continues to lease Class Vehicles notwithstanding its awareness of the defective braking system and of the danger posed by the defect. In doing so, Defendant GM makes false claims about its vehicles being defect free or omits material information about the known defect in the Class Vehicles. Defendant GM has furthered its scheme of unconscionable and deceptive acts of material omission by making false, deceptive, and misleading statements in its service bulletins about possible cures for the known defect. Defendant GM's acts constitute an unconscionable act or course of action; and a false, misleading, or deceptive act or practice in violation of Texas Business & Commerce Code § 17.46(a) & (b)(2), (5), (7), (9), (13) & (24).

48. Pursuant to Texas Business & Commerce Code § 17.50(b)(1), Plaintiff and the Texas Class are entitled to relief in the form of an award of economic damages found by the trier of fact, and which should be trebled based upon the Defendant's actions which were committed knowingly.

49. Pursuant to Texas Business & Commerce Code § 17.50(b)(2) and due to GM's continued sale of these vehicles and failure to make truthful disclosures, Plaintiff and the Texas Class are entitled to relief in the form of an order enjoining Defendant's deceptive acts.

50. Pursuant to Texas Business & Commerce Code § 17.50(b)(1), Plaintiff and the Texas Class are entitled to relief in the form of an order restoring the Plaintiff and the Texas Class members to their money which was acquired in violation of § 17.46(a) & (b)(2), (5), (7), (9), (13) & (24).

51. Pursuant to Texas Business & Commerce Code § 17.50(d), Plaintiff and the Texas Class are entitled to and award of court cost and reasonable attorneys' fees.

## FOURTH COUNT FOR RELIEF
### (Money Had And Received)

52. Plaintiff, individually and for the Texas Class, hereby incorporates each and every allegation as though fully set forth herein.

53. Plaintiff and the Texas Class paid monies for Class Vehicles which were not valued as charged because of the defect which Defendant GM intentionally concealed. By selling a defective vehicle or by failing to disclose the defect and selling Class Vehicles with knowledge of the defect, Defendant GM received and possessed money which rightfully belonged to Plaintiff and the Texas Class Members.

54. As a result of overcharging for defective vehicles, Defendant GM possessed(es) money which in equity and good conscience belongs to Plaintiff and Texas Class Members—thereby causing Plaintiff and the Texas Class damages.

## FIFTH CLAIM FOR RELIEF
### (Violation of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, et seq.)

55. Plaintiffs, individually and for the National Class, hereby incorporate each and every allegation as though fully set forth herein.

56. For each Class Vehicle, Defendant GM issued an express written warranty that covered the vehicle, including but not limited to the braking system, and which warranted the vehicle to be free of defects in materials and workmanship at the time of delivery.

57. Defendant GM breached its express warranties by offering for sale and selling defective vehicles that were by design and construction defective and unsafe, thereby subjecting the occupants of the Class Vehicles purchased or leased to damages and risks of loss and injury.

58. Plaintiffs and members of the National Class are "consumers" within the meaning of the Magnuson-Moss Act, 15 U.S.C. § 2301(3).

59.     Defendant GM is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Act, 15 U.S.C. § 2301(4) and (5).

60.     The Class Vehicles at issue are "consumer products" within the meaning of the Magnuson-Moss Act, 15 U.S.C. § 2301(6).

61.     Defendant GM's written and implied warranties relate to the future performance of its vehicles because it promised that the brakes of the Class Vehicles would perform adequately for a specified period of time or mileage, whichever came first.

62.     Defendant GM has breached and continues to breach its written and implied warranties of future performance, thereby damaging Plaintiff and similarly situated National Class Members, when their Class Vehicles fail to perform as represented due to an undisclosed brake defect.  Defendant GM fails to fully cover or pay for necessary inspections, repairs and/or vehicle replacements for Plaintiffs and the Class.

63.     Without limitation, GM's intentional delay and concealment of information regarding the brake defect from its dealers, prospective Class Vehicle purchasers, National Class Members, and Plaintiff, and its inability to remedy the defect through the Service Bulletins, all have caused any exclusive or limited remedy in the warranty to fail its essential purpose.

64.     Any purported limitations of warranties or remedies would be unconscionable because of Defendant's knowledge regarding the defects in Class Vehicles, Defendant's omission to the National Class Members about the defects and/or Defendant's intentional concealment of the defect, and the failure of GM to provide an adequate remedy.

65.     Plaintiffs, members of the National Class, and the public will suffer irreparable harm if Defendant GM is not ordered to properly repair all of the Class Vehicle immediately, offer rescission to the National Class by repurchasing their Class Vehicles for their full cost, reimburse

the lessees of the Class Vehicles the monies they have paid toward their leases, recall all defective vehicles that are equipped with the defective brakes, and cease and desist from marketing, advertising, selling, and leasing the Class Vehicles.

66. Defendant GM is under a continuing duty to inform its customers of the nature and existence of potential defects in the vehicles sold.

67. Such irreparable harm includes but is not limited to likely injuries as a result of the defects to the Class Vehicles.

68. Plaintiff and the National Class seek full compensatory damages allowable by law, attorney's fees, costs, punitive damages, and appropriate equitable relief including injunctive relief, a declaratory judgment, a court order enjoining Defendant GM's wrongful acts and practices, restitution, the repair of all Class Vehicles, replacement of all Class Vehicles, the refund of money paid to own or lease all Class Vehicles, and any other relief to which Plaintiff and the National Class may be entitled

## JURY DEMAND

69. Plaintiff demands a jury trial on all issues so properly triable.

## PRAYER

70. WHEREFORE, PREMISES CONSIDERED, Plaintiff and Class Members within their respective Classes respectfully pray that the Court:

(a) For each of the proposed Classes, certify this action as a class action as permitted by FED. R. CIV. P. Rule 23(b)(2) and (b)(3), appoint Plaintiff as class representative, and appoint Plaintiff's counsel as class counsel;

(c) Direct that notice be issued to the Class Members;

(b) Conduct a trial on the merits and, thereafter, enter judgment against GM in favor of Plaintiff and Class Members consistent with the damages amounts, restitution and/or other relief requested herein or for which Plaintiff and the Class may prove themselves entitled.

Respectfully submitted,

By: /s/ *James C. Wyly*
James C. Wyly
Texas Bar No. 22100050
Sean F. Rommel
Texas Bar No. 24011612
WYLY-ROMMEL, PLLC
4004 Texas Boulevard
Texarkana, TX 75503
(903) 334-8646 -- Telephone
(903) 334-8645 – Facsimile

F. Jerome Tapley
(Will Seek Admission *Pro Hac Vice*)
Hirlye R. "Ryan" Lutz, III
(Will Seek Admission *Pro Hac Vice*)
Adam Pittman
(Will Seek Admission *Pro Hac Vice*)
CORY WATSON, P.C.
2131 Magnolia Avenue
Birmingham, Alabama 35205
(205) 328-2200 – Telephone
(205) 324-7896 – Facsimile
jtapley@corywatson.com
rlutz@corywatson.com
apittman@corywatson.com

**ATTORNEYS FOR PLAINTIFF**